IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| MICHELLE M. REED and JULIA K. MCLINDEN, individually and on behalf of a collective of persons similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | No. ) ) |
| METHODIST HEALTH SERVICES CORPORATION, an Illinois Corporation, d/b/a UNITYPOINT HEALTH- PEKIN HOSPITAL, UNITYPOINT HEALTH - METHODIST HOSPITAL & UNITYPOINT HEALTH - PROCTOR HOSPITAL; and PROGRESSIVE HEALTH SYSTEMS, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## COLLECTIVE ACTION COMPLAINT

Plaintiffs, Michelle M. Reed and Julia K. McLinden, on behalf of themselves and all others similarly situated, by and through their attorneys, Carl Reardon, Carol Babbitt and Jeffrey Grant Brown, bring this action against Defendants Methodist Health Services Corporation, d/b/a UnityPoint Health and Progressive Health Systems ("Defendants") for damages and other relief relating to violations of the Fair Labor Standards Act ("FLSA").

JURISDICTION AND VENUE

1. This Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein under 28 U.S.C. § 1331, this action being brought under the Fair Labor Standards Act,

29 U.S.C. § 201 et seq. ("FLSA").

2. Venue is proper in the United States District Court for the Central District of Illinois pursuant to 28 U.S.C. § 1391 because Plaintiff worked for Defendants in this district and a substantial part of the events giving rise to the claims occurred in this district.

PARTIES

3. Defendant Methodist Health Services Corporation is an Illinois corporation d/b/a UnityPoint Health, (hereafter, "UnityPoint"). Upon information and belief, UnityPoint operates three hospitals in the State of Illinois, 'UnityPoint Health - Methodist Hospital' located in Peoria, Illinois; 'UnityPoint Health - Proctor Hospital' in Peoria, Illinois; and 'UnityPoint Health - Pekin Hospital' in Pekin, Illinois.

4. Upon information and belief, Defendant Progressive Health Systems, a/k/a Progressive Health Network ("Progressive") is an Illinois not-for-profit corporation that was, at some or all relevant times to this lawsuit, or still is, the parent corporation for UnityPoint Health - Pekin Hospital in Pekin, Illinois.

5. Defendants operate in interstate commerce by, among other things, providing health care services to customers throughout Illinois and Iowa.

6. Upon information and belief, Defendants' gross annual sales made or business done has been in excess of $500,000.00 at all relevant times.

7. At all relevant times, Defendants each are, and have been, an "employer" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203(d) and 29 U.S.C. § 203(s)(1).

8. Plaintiff Michelle M. Reed is an adult resident of the State of Illinois. She was employed by

Defendants from approximately December, 1995 through March, 2019. During the applicable statutory period, Plaintiff Reed worked for Defendants at Pekin Hospital in Pekin, Illinois, and held the title of 'Case Manager.'

9. Plaintiff Julia K. McLinden is an adult resident of the State of Illinois. She was employed by Defendant Pekin Hospital from approximately 2005 through 2011 and again from 2014 through December 20, 2019. During the applicable statutory period, Plaintiff McLinden worked for Defendants at Pekin Hospital and held the title of 'Case Manager.'

10. At all relevant times, Plaintiffs and any opt-in Plaintiffs are, have been, or were, during the statutory period, an "employee" of each of the Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e).

FACTUAL ALLEGATIONS

11. Plaintiff Reed was initially hired by one or both Defendants as a Staff Registered Nurse at Pekin Hospital in or about 1995. She held this position from approximately 1995-2006. In 2006 Plaintiff achieved the title of Director of Surgical Floor at Pekin Hospital, remaining in this position until 2012, when she was asked by administration to apply for the position of Director of Surgical Services with Defendants. She did so, was hired as Director, and remained in that position until approximately June, 2016. In or about June, 2016, Plaintiff Reed voluntarily changed her position to "Utilization Review and Case Manager." Upon information and belief, Defendant Progressive was already the parent company of Pekin Hospital, and upon information and belief, Unity Point acquired Pekin Hospital in approximately January, 2017. In September, 2017, Unity Point changed Plaintiff Reed's position to a full-time Case Manager.

12. Plaintiff Reed held this position until she was involuntarily terminated on or about March 29, 2019. Plaintiffs and similarly situated individuals worked as Case Managers and in similar positions performing case management services for Defendants (collectively, "CM's").

13. Plaintiff McLinden was initially hired by one or both Defendants in 2005 as a staff nurse on the surgical unit at Pekin Hospital. She began her career as a Case Manager in or around 2008 until approximately 2011 when she left Pekin Hospital's employ to pursue a nursing position at a different entity. Plaintiff McLinden returned to Pekin Hospital in approximately 2014 as a staff nurse on the surgical unit and she rejoined the Case Management department in approximately 2015, where she remained a full-time employee of Defendant through approximately December,2019.

14. As CM's, Plaintiffs and the similarly situated individuals' primary job duties were non-exempt, consisting of reviewing patients' chart, interviewing patients, and discharge planning and set up for needed services.

15. From approximately June, 2016 to approximately February, 2018, Plaintiffs were paid an hourly rate for their work as a Case Manager and were paid overtime for time worked beyond a forty-hour work week; and were additionally paid "on-call pay" for time worked during evenings and weekends every other week.

16. In approximately February, 2018, Plaintiffs and the similarly situated individuals continued to perform the same job duties and responsibilities as they had performed since approximately June, 2016. Nonetheless, in approximately February, 2018, the compensation of Plaintiffs and the similarly situated individuals was summarily and unjustifiably changed by Defendants from an hourly basis to a salary basis, with no overtime pay and no

adjustment in the rate of pay nor time needed to complete their work.

17. At that time, Plaintiffs and the similarly situated individuals were classified as exempt from federal and state overtime laws by Defendants.

18. Defendants permitted Plaintiffs and the similarly situated individuals to work more than forty (40) hours per week without overtime pay. Just weeks after changing Plaintiffs' compensation classification to exempt, Defendants instituted a 'Pilot Project' which essentially combined two job titles into one, requiring Plaintiffs to work even more overtime hours than before their classification was changed to exempt.

19. Plaintiff Reed typically started her workday at approximately 8:00 a.m., and although her workday was scheduled to end at or around 4:30 p.m., she frequently, at least three to four times weekly, worked 12 hours or more in a given work day and often worked from her home until 8:00 p.m. or later.

20. Plaintiff McLinden worked her regular shift plus overtime and encountered criticism from Defendants for not being willing or capable of accessing information remotely from her home via the internet so she could continue working after she left the hospital grounds. As a result, it was common that in any given work week, Plaintiffs estimate that they worked at least approximately fifty (50) hours (or more) without receiving any straight time or overtime compensation for the additional amount of time worked beyond forty hours in a work week.

21. Plaintiffs also remained on-call in the evenings and weekends every other week without additional pay.

22. At all times relevant herein, Defendants operated a willful scheme to deprive Plaintiffs and all other similarly situated employees and CM's of overtime compensation.

23. Defendants knew that the Plaintiffs and other similarly situated individuals were working unpaid overtime hours because they required Plaintiffs and others to work overtime hours in order to complete all of their work assignments and meet Defendants' pre-determined goals.

24. Plaintiffs' supervisors were also aware that Plaintiffs worked overtime because they were regularly included in conversations, emails and texts with Plaintiffs, at times outside of their regularly scheduled hours.

25. Plaintiffs and similarly situated individuals complained to Defendants' management that they were not being properly compensated for overtime. Specifically, Plaintiffs complained that their work duties and responsibilities had not changed since they had been misclassified as non-exempt, and because the nature of the working conditions, Plaintiffs suggested on multiple occasions that Defendants should change their classification status back to non-exempt, and Defendants should pay them and other CM's an overtime premium for the time they worked beyond forty hours per work week. Defendants ignored these requests and did not address these complaints.

26. Plaintiff Reed also complained directly in a meeting with direct supervisor (Sam Nelson) and HR representative (Fred Darche) about not receiving overtime pay. This meeting was to acknowledge that the forced PTO day that had been imposed on these non-exempt employees was in fact inappropriate and a mistake. Plaintiff Reed then inquired if UnityPoint had followed a formal process to determine that the exempt status it had declared applicable to Plaintiffs was appropriate, as Plaintiffs were regularly working additional time without a rate adjustment or on-call pay. Defendants' HR representative responded that if Plaintiff and other CM's consistently worked over 50 hours, to discuss the matter with him again. He told

them 50 hours of work per work week was expected to get the job done.

27. Defendants continued to deny overtime compensation to Plaintiff Reed and those similarly situated thereafter.

28. Upon information and belief, although they had a legal obligation to do so, Defendants did not make, keep, or preserve adequate or accurate records of the time worked by Plaintiffs and the similarly situated individuals.

COLLECTIVE ACTION ALLEGATIONS

29. Plaintiffs, individually and on behalf of all similarly situated individuals, restate and incorporate by reference the above paragraphs as if fully set forth herein.

30. Plaintiffs bring this action individually and on behalf of all similarly situated individuals working with each of the three UnityPoint Pekin, UnityPoint Proctor and UnityPoint Methodist Hospitals. Pursuant to 29 U.S.C. § 216(b), Plaintiffs' signed consent forms are attached as Exhibit 1. As this case progresses, it is likely that other individuals will also join this case as opt-in plaintiffs.

31. The employees similarly situated are:

FLSA Collective Class: All persons who are, have been, or will be employed by either Defendant or both Defendants as Case Managers or other similar job positions, and whose primary job responsibilities were to provide discharge planning or case management services, at any time from three years prior to the filing of this Complaint through the entry of judgment, and whose compensation classification was identified as 'exempt' and/or who were denied overtime pay at one and one half times their regular hourly rate for any time worked beyond forty hours in a work week.

32. Plaintiffs and the FLSA Collective Class worked or work in excess of forty (40) hours during at least one workweek within the applicable statutory period.

33. Defendants did not pay Plaintiffs or the FLSA Collective overtime premiums for their

overtime hours worked. Defendants willfully engaged in a pattern of violating the FLSA, 29 U.S.C. § 201 *et seq.*, as described in this Complaint in ways including, but not limited to, failing to pay its employees overtime compensation.

34. Defendants' conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

35. Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the similarly situated individuals. Accordingly, notice should be sent to the FLSA Collective Class members. There are other similarly situated current and former employees of Defendants who have suffered from Defendants' practice of denying overtime pay and who would benefit from the issuance of court-supervised notice of this lawsuit and the opportunity to join. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

## CAUSE OF ACTION

### COUNT I – VIOLATIONS OF THE FAIR LABOR STANDARDS ACT
### FAILURE TO PAY OVERTIME
(on behalf of Plaintiffs and similarly situated individuals)

36. Plaintiffs and the FLSA Collective Class restate and incorporate by reference the above paragraphs as if fully set forth herein.

37. The FLSA, 29 U.S.C. § 207, requires employers to pay non-exempt employees one and one-half times the regular rate of pay for all hours worked over forty (40) hours per workweek.

38. Defendants suffered and permitted Plaintiffs and the FLSA Collective Class to work more than forty (40) hours per week during weeks within the statutory period without paying them

overtime compensation.

39. Defendants' actions, policies, and practices described above violate the FLSA's overtime requirement by regularly and repeatedly failing to compensate Plaintiffs and the FLSA Collective Class the required overtime pay.

40. As the direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the FLSA Collective Class have suffered and will continue to suffer a loss of income and other damages. Plaintiffs and the FLSA Collective Class are entitled to liquidated damages, attorneys' fees, and costs incurred in connection with this claim.

41. By failing to accurately record, report, and/or preserve records of hours worked by Plaintiffs and the FLSA Collective Class, Defendants have failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. § 201, *et seq.*

42. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Defendants knew, or showed reckless disregard for the fact, that their compensation practices were in violation of these laws.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, prays for relief as follows:

A. Certification of the Collective as set forth in paragraph 31, *supra*,

B. Designation of Plaintiff Michelle Reed and Julia McLinden as representatives of the FLSA Collective;

C. Designation of Attorneys Jeffrey G. Brown, Carol C. Babbitt and Carl Reardon as counsel for

the collective;

D. The entry of an order that Defendants provide contact information for all members of the collective;

E. Designation of this action as a collective action on behalf of the FLSA Collective, with the entry of an order for the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals apprising them of the pendency of this action, and permitting them to assert FLSA claims in this action by filing individual consent forms pursuant to 29 U.S.C. § 216(b);

F. Judgment against Defendants in the amount of Plaintiffs' and the FLSA Collective Class' unpaid back wages at the applicable overtime rates;

G. An additional and equal amount as liquidated/statutory damages under federal law;

H. Appropriate civil penalties; and

I. A finding that Defendants' violations of the FLSA were willful and in bad faith;

J. All reasonable costs and attorneys' fees pursuant to 29 U.S.C. § 216;

K. An award of prejudgment interest (to the extent liquidated damages are not awarded) and post-judgment interest as provided by law;

L. Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and

M. All further relief as the Court deems just and equitable.

**JURY DEMANDED ON ALL COUNTS**

Dated: December 20, 2019

           **Respectfully Submitted,**
           **Attorney for Plaintiff**
           By: /s/Jeffrey Grant Brown
               *Jeffrey Grant Brown*
               One of Plaintiff's attorneys

| | |
|---|---|
| Jeffrey Grant Brown | Carol Coplan Babbitt |
| Jeffrey Grant Brown, P.C. | Law Offices of Carol Coplan Babbitt |
| 221 North LaSalle Street, Suite 1414 | 35 East Wacker Drive, Suite 650 |
| Chicago, IL 60601 | Chicago, IL 60601 |
| 312.789.9700 | 312.435.9775 |
| jeff@JGBrownlaw.com | carol@ccbabbittlaw.com |
| ARDC # 6194262 | ARDC # 6199651 |

Carl Reardon
120 Illini Drive
East Peoria, Illinois  61611
309 699 6767
CarlReardon@comcast.net
ARDC # 2295725