E-FILED
Monday, 01 March, 2021 11:54:24 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION**

MICHELLE M, REED, JULIA K. MCLINDEN, individually and on behalf of a collective of persons similarly situated,

Plaintiff,

v.

METHODIST HEALTH SERVICES CORP., an Illinois corporation d/b/a UNITYPOINT HEALTH-PEKIN, UNITYPOINT HEALTH-METHODIST HOSPITAL & UNITYPOINT HEALTH-PROCTOR HOSPITAL; and PROGRESSIVE HEALTH SYSTEMS,

Defendants.

Case No. 19-cv-1412

**REPORT AND RECOMMENDATION**

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE

This matter comes before the Court for a Report and Recommendation on the Plaintiff's Motion for Conditional Certification and for Court-Supervised Notice to Issue (d/e 24) (Motion). For the reasons set forth below, this Court recommends that the Motion should be ALLOWED in part. The Court should grant conditional certification of the Plaintiffs'

proposed collective class and direct the parties to confer and agree on the text of the notice to be sent to similarly situated persons.

BACKGROUND

Plaintiffs Michelle Reed and Julia McLinden bring this action for unpaid overtime under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (FLSA). Plaintiffs formerly worked at UnityPoint Health-Pekin Hospital in Pekin, Illinois (Pekin Hospital). Plaintiffs allege that Defendant Methodist Health Services Corporation (UnityPoint) operated three hospitals: Pekin Hospital, UnityPoint Health-Methodist Hospital (Methodist Hospital), and UnityPoint Health-Proctor Hospital (Proctor Hospital) (collectively the Hospitals). Methodist Hospital and Proctor Hospital are both in Peoria, Illinois. Plaintiffs allege that Defendant Progressive Health Systems (Progressive) was the parent corporation for Pekin Hospital. Plaintiffs allege that UnityPoint acquired Pekin Hospital in January 2017. Plaintiffs allege that Defendants employed them at relevant times at Pekin Hospital. Collective Action Complaint (d/e 1) (Complaint), ¶¶ 3, 4, 11.

Plaintiffs are both Registered Nurses and worked as Case Managers at Pekin Hospital. Plaintiff Reed became a part-time Case Manager in June 2016 and then became a full-time Case Manager in September 2017, and worked in that position until her employment at Pekin Hospital ended in

March 2019. Plaintiff McLinden worked as a Case Manager from 2015 through the end of her employment at Pekin Hospital in December 2019. Plaintiffs allege that Case Managers' job duties consisted of "reviewing patients' chart (sic), interviewing patients, and discharge planning and set up for needed services." From June 2016 through February 2018, Plaintiffs were paid on an hourly basis and were paid one and one-half times their regular pay rate (overtime pay) for all hours worked in excess of 40 hours a week (overtime). Plaintiffs were also paid "on-call pay" for time worked on evening and weekends every other week. Complaint ¶¶ 11-28.

Plaintiffs bring the action on behalf of themselves and a class of all similarly situated employees at all three Hospitals in a collective action pursuant to FLSA 29 U.S.C. § 216(b). Plaintiffs allege the class of employees in this collective action (Proposed Class) are:

> FLSA Collective Class: All persons who are, have been, or will be employed by either Defendant or both Defendants as Case Managers or other similar job positions, and whose primary job responsibilities were to provide discharge planning or case management services, at any time from three years prior to the filing of this Complaint through the entry of judgment, and whose compensation classification was identified as 'exempt' and/or who were denied overtime pay at one and one half times their regular hourly rate for any time worked beyond forty hours in a work week.

Complaint, ¶ 31.

Defendants admitted in their Answer that they employed Plaintiffs as Case Managers at Pekin Hospital; that Defendants employed others as Case Managers; that from 2016 until February 2018, Case Managers were paid on an hourly basis, were paid overtime pay for overtime, and were paid on-call pay; that starting in February 2018, Defendants paid Case Managers on a salary basis; that Plaintiffs worked overtime after February 2018; that the Defendants knew that Plaintiffs worked overtime and permitted them to do so; that Defendants did not pay Plaintiffs overtime pay for overtime; that Defendants no longer paid on-call pay to Case Managers after February 2018. Defendants assert that they stopped paying Plaintiffs overtime pay because Plaintiffs' positions as Case Managers were exempt from FLSA requirements to pay overtime pay. Defendants' Answer to Collective Action Complaint (11) (Answer) ¶¶ 7, 8, 9, 11, 12, 13, 15, 17, 18, 21, 27, and Affirmative Defenses ¶ 2.

Defendants agree in their Response to the Motion that the duties of Case Managers at the three Hospitals included "reviewing patient charts, interviewing patients, discharge planning, and setting up needed services." Defendants' Response to Plaintiff's Motion for Certification [d/e #24] (d/e 27) (Response), at 13. Defendants listed in their answers to Plaintiffs' interrogatories that during the relevant period, Defendants employed 30

employees as Case Managers at Methodist Hospital, one employee as a Case Manager at Proctor Hospital, and three employees (including Plaintiffs) as Case Managers at Pekin Hospital. Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Conditional Certification and for Court-Supervised Notice to Issue (d/e 29) (Reply), Exhibit 4, Defendants' Answers to Plaintiff Michelle Reed' First Set of Interrogatories (Interrogatory Answers), Answer to Interrogatory 12.

Plaintiffs submitted their declarations in support of the Motion. Motion, Exhibits 1 and 2, Declaration of Michelle Reed (Reed Declaration) and Declaration of Julia McLinden (McLinden Declaration). Plaintiff Reed also attached as Exhibit A to her declaration a notice from UnityPoint Health Human Resources Department dated January 22, 2018 (Reclassification Notice). McLinden received the same Reclassification Notice. McLinden Declaration ¶ 10.

Reed recounted her work history at Pekin Hospital in her declaration. She was a full-time Case Manager beginning in September 2017. Reed stated that she worked with and observed Case Managers who worked at Methodist Hospital and Proctor Hospital. Reed Declaration ¶ 3. She described the duties of a Case Manager:

> 10. My primary duties, and the duties of each of the Case Managers at all times consisted of calling patients, scheduling

> patients for discharge transportation, scheduling dates to move patients to other levels of care and for discharge, phone calls to family members to assist in arrangements, and occasionally scheduling care conferences with family members and physicians, all under the guidance and direction of the assigned physician.

Reed Declaration ¶ 10. Reed further stated that Case Managers did not perform any managerial functions or functions that required the exercise of independent judgment:

> 12. My job duties and the duties of other Case Managers I observed did not require the exercise of independent judgment with respect to matters of significance; and I was not involved in managing hospital business operations. I relied on manuals and guidelines to perform my duties, which primarily consisted of inputting data into forms. For many continued stay requests, I used a web-based format that was provided by Unity Point. My work was supervised by a Director of Case Management, Sherry Hoffman, and then Interim Director of Case Management Samantha Nelson, and I had no control over which cases I worked on. I did not supervise any employees and did not have any managerial discretion nor was I responsible to hire or fire employees or interview job applicants. I did not deliver or administer services directly to patients and did not provide clinical care, did not make decisions concerning patient care, nor make final determinations about whether or not a patient was certified for additional days in the facility.

Reed Declaration ¶ 12. Reed stated that she, Plaintiff McLinden, and the other Case Managers at all three hospitals "performed essentially the same job responsibilities." Reed Declaration, ¶ 14. Defendants also produced in discovery a single job position description for Case Managers for UnityPoint facilities in central Illinois, which would include all three

Hospitals.[1] Reply, Exhibit 5, UnityPoint Job/Position Description for the position of "RN Case Manager."

McLinden recounted in her Declaration her employment history at Pekin Hospital. McLinden stated that Case Managers at Proctor Hospital and Methodist Hospital had the same duties as she and Reed:

> 9. I became aware that Unity Point Health - Pekin Hospital and other Unity Point Health facilities in the area also utilized persons who worked as Case Managers, with the same duties and responsibilities that I had. I spoke with many of these persons, including in monthly meetings, in connection with my duties as Case Manager, and in other periodic scheduled meetings, and learned that our duties as Case Manager were very similar to those working at other Unity Point locations.

McLinden Declaration ¶ 9. McLinden further described the primary duties of Case Managers:

> 11. My primary duties, and the duties of each of the Case Managers at Unity Point-Pekin and other Unity Point facilities at all times consisted of calling patients, scheduling patients for discharge transportation, scheduling dates to move patients to other levels of care and for discharge, phone calls to family members to assist in arrangements, and occasionally scheduling care conferences with family members and physicians, all under the guidance and direction of the assigned physician.

[1] The position description applied to UnityPoint positions in Central Illinois. This case does not concern other hospitals elsewhere that may use the name UnityPoint. All three of the Hospitals at issue are in central Illinois.

McLinden Declaration ¶ 11. McLinden also reiterated the statements in paragraphs 10 and 12 of the Reed Declaration, quoted above. McLinden Declaration ¶¶ 13, 15.

Reed attached to her Declaration a copy of the Reclassification Notice. The Reclassification Notice discussed the U.S. Department of Labor's Wage and Hour Division (Wage and Hour Division) regulations regarding jobs that are exempt from the FLSA overtime pay requirements. The regulations state an employee is exempt from the FLSA overtime pay requirements (and so are not entitled to overtime pay) if the employee earns more than $455 per week, is paid on a salary basis, and is employed, inter alia, in "a bona fide administrative capacity" or "a bona fide professional capacity" (exempt position). 29 C.F.R. §§ 541.100 – 541.710.[2] An employee is employed in a bona fide administrative capacity if the employee performs non-manual work:

> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

[2] The § 541 exemptions to overtime requirements also apply to employees employed in executive, computer, or outside sales capacities. Those employment capacities are not at issue in this case.

29 C.F.R. §§ 541.200(a)(2) and (3). An employee is employed in a bona fide professional capacity if the employee's:

> [P]rimary duty is the performance of work:
>
> (i) Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or
>
> (ii) Requiring invention, imagination, originality, or talent in a recognized field of artistic or creative endeavor.

29 C.F.R. § 541.300(a); see also 29 C.F.R. 541.301(e)(2) (registered nurses generally meet the requirement for professional exemption from overtime pay).

The Reclassification Notice stated that the Wage and Hour Division had amended § 541 of the regulations to increase the minimum salary for exempt positions under from $455 per week to $913 per week. The change was effective December 1, 2016. UnityPoint complied with the change in § 541 and reclassified certain jobs as "non-exempt" and so subject to the overtime pay requirements of the FLSA. Thus, beginning in 2016, UnityPoint paid Reed and McLinden on an hourly basis and paid each of them overtime pay for overtime. The Reclassification Notice further explained that a federal judge permanently enjoined the implementation of the new regulations. As a result, the minimum salary for exempt employees reverted to $455 per week. The Reclassification Notice notified

Reed and McLinden that in light of the injunction, their Case Manager jobs would be reclassified as exempt positions, and they would be paid on a straight salary basis without overtime pay effective February 4, 2018. Reclassification Notice. Defendants also stated in discovery that Defendants classified 28 Case Managers at all three Hospitals as exempt positions. Reply, Interrogatory Answers, Answer to Interrogatory 12.

Plaintiffs claim that Case Manager positions at the Hospitals are in fact non-exempt positions and they are entitled to unpaid overtime pay for overtime worked after February 2018. Plaintiffs move to conditionally certify the Proposed Class for a collective action on behalf of Plaintiffs and other similarly situated Case Managers pursuant to 29 U.S.C. § 216(b) and to authorize Plaintiffs to send a court-approved notice to such individuals in the Proposed Class. Defendants oppose the Motion.

## ANALYSIS

Employees who were not paid overtime pay to which they were entitled under the FLSA may bring an action against the employer to recover the unpaid overtime. Employees may recover unpaid overtime earned within two years of the filing of the action; provided however, that if the employer willfully failed to pay the overtime pay, the employees may recover overtime pay earned within three years of filing the action and may

also recover liquidated damages equal to the amount of the unpaid overtime. 29 U.S.C. §§ 207, 216, 255(a).

An action for unpaid overtime under the FLSA may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." on behalf of himself or herself and one or more similarly situated employees. 29 U.S.C. § 216(b). The similarly situated employees must consent in writing to becoming a party and the consent must be filed with the Court. Id. Section 216(b) does not set forth procedures for collective actions. Class action procedures under Rule 23 are preempted by § 216(b) and do not apply. See King v. General Elec. Co., 960 F.2d 617, 621 (7th Cir. 1992); LaChapelle v. Owens-Illinois, Inc., 513 F.2d 286, 289 (5th Cir. 1975).

Most courts, including this Court, have adopted a two-step approach to certifying a collective action under § 216(b). See Smith v. Alamo Claim Service, 2015 WL 13594414, at *2 (C.D. Ill. March 31, 2015) (collecting cases from District Courts in the Seventh Circuit). Under this approach, the plaintiff at the first step in the process must only make a "modest factual showing" that other employees are similarly situated and that "the potential plaintiffs together were victims of a common policy or plan that violated the law." Smith, 2015 WL 13594414, at *2 (quoting Taillon v. Kohler Rental

Power, Inc., 2003 WL 206593, at *1 (N.D. Ill. April 29, 2003). Upon making this showing, the Court conditionally certifies the collective action and authorizes the plaintiff to send a court-approved notice to potential plaintiffs in the defined class. Interested members of the conditional class may then opt into the class by filing written consents to participate in the action as a member of the class. The second step in the certification process occurs after completion of discovery. At the second step, the Court determines whether the conditional class members are actually similarly situated or whether the conditional class should be restricted or decertified. Smith, 2015 WL 1354414, at *3.

The Plaintiffs' Motion comes at the first step of the two-step process. The Plaintiffs, therefore, need only make a modest factual showing that Case Managers at the Hospitals are similarly situated and subject to a common policy or plan that violated the FLSA. The Plaintiffs have met their burden. The allegations to which the Defendants admit in their Answer establish that the Defendants were the employers and that they employed Plaintiffs as Case Managers at Pekin Hospital and that the Defendants employed other Case Managers. Defendants further stated in discovery that during the relevant period they employed 30 Case Managers at

Methodist Hospital, one Case Manager at Proctor Hospital, and an additional Case Manager at Pekin Hospital besides the Plaintiffs.

Plaintiffs further state in their declarations that in the course of their work at Pekin Hospital they worked with and observed Case Managers at Methodist Hospital and Proctor Hospital and learned that the Case Managers at those facilities performed the same functions that Plaintiffs performed at Pekin Hospital. See Reed Declaration ¶ 3; McLinden Declaration ¶ 9. Defendants also agreed in their Response that duties of Case Managers at the three Hospitals included "reviewing patient charts, interviewing patients, discharge planning, and setting up needed services." Response, at 13. The Defendants also produced in discovery a single job description for all Case Managers at all three Hospitals. This evidence tends to show that Case Managers at the three Hospitals were similarly situated.

Plaintiffs further state in their declarations that Case Manager positions "do not require the exercise of independent judgment with respect to matters of significance; and I was not involved in managing hospital business operations." Reed Declaration ¶ 12, quoted above; McLinden Declaration ¶ 13. Plaintiffs also allege and Defendants agree that Case Managers' duties included reviewing patient charts, interviewing patients,

discharge planning, and setting up needed services. This evidence tends to show that Case Managers were not engaged in the practice of providing nursing care to patients. The Plaintiffs thereby have made a modest factual showing that Case Managers were not employed in a bona fide administrative or professional capacity, and so, were not employed in exempt positions under the § 541 regulations. As employees working in non-exempt positions, they were entitled to overtime pay for the overtime that they worked.

The Plaintiffs further have presented a modest factual showing that Defendants subjected all Case Managers to the same policy to deny them overtime pay. The Reclassification Notice supports the inference that the Defendants as a matter of policy changed the classification of Case Managers to exempt positions in February 2018. The Reclassification Notice indicates that UnityPoint reclassified many positions when the federal court permanently enjoined the implementation of the new § 541 regulations. The Defendants also stated in their Answer and asserted as an affirmative defense that the Defendants classified Reed and McLinden's positions as Case Managers as exempt positions after February 2018. The Defendants stated in their answers to interrogatories that they classified 28 Case Manager positions as exempt positions.

The Defendants' admissions in their Answer, the Reclassification Notice, the declarations of Reed and McLinden, and Defendants' discovery responses provide the modest factual showing necessary to show that the Plaintiffs' Proposed Class were similarly situated, were not employed in either bona fide administrative or professional positions, and were all subjected to Defendants' policy to treat Case Managers as exempt from overtime pay. The collective claims would have the same central issue, whether the Defendants' policy to classify Case Managers at the Hospitals as exempt positions violated the FLSA. The Plaintiffs request to proceed in a collective action should be allowed.

Defendants argue that Plaintiffs should not be allowed to proceed with a collective action at this time because Defendants were not Plaintiffs' employer at Pekin Hospital. They assert that Defendant UnityPoint is a parent corporation that owns three subsidiary Illinois not-for- profit corporations The Methodist Medical Center of Illinois, Proctor Hospital, and Pekin Memorial Hospital. Response, Exhibit A, Declaration of Kami Petitgoue ¶ 3. Each subsidiary owns and operates one of the Hospitals. They assert that Progressive Health Systems previously was the sole member of Pekin Hospital, but was dissolved July 2020 and no longer exists. Id. ¶ 5.

The Court disagrees. Defendants admitted in their Answer they were employers and employed Plaintiffs. Defendants further admitted that they employed other Case Managers. Answer ¶¶ 7, 8, 9, and 15. Those admissions are judicial admissions that the Court and the Plaintiffs can take as true. See Kohler v. Leskie Hindman, Inc., 80 F.3d 1181, 1185 (7th Cir. 1996). Defendants further concede that the term "employer" under the FLSA is broad enough to encompass parent corporations such as UnityPoint and the dissolved Progressive Health Systems that "suffer or permit work." See Response, at 4 (citing 29 U.S.C. § 203(g); Rutherford Food Corp. v. McComb, 331 U.S. 722, 728 (1947). Defendants admitted in their Answer that Defendants permitted Reed and McLinden to work overtime as Case Managers without receiving overtime pay. Defendants also stated in their discovery responses that they had a single job description for Case Managers at all three Hospitals and that they employed Case Managers at all three of the Hospitals. Defendants further concede that Plaintiffs can proceed against a dissolved corporate entity like Progressive Health Systems. Response, at 5. In light of the Defendants' judicial admissions and the other evidence, the Court sees no reason to delay conditional certification of the Proposed Class.

Defendants argue that they should be allowed to present substantive defenses before sending notices for a collective action. The Defendants are wrong. The first step of conditional class certification only requires a modest factual showing by the Plaintiffs before certifying a conditional class and sending the notice. The substantive issues, including defenses, will be considered at the second step in the two-step process. Smith, 2015 WL 1354414, at *3. The Defendants, inconsistently, concede elsewhere in their Response that their substantive defenses should not be considered at this point, "Defendants are also mindful that conditional certification is not the time to advance substantive defenses to the Plaintiffs' claims, or to attempt to dispute evidence." Response, at 2 (citing Smith, 2015 WL 13594414, at *4.). Defendants may dispute substantive issues and raise defenses at the second step of class certification, not now.

The Defendants' proposal to delay ruling on the first step in the collection action certification process may also prejudice potential class members. The two-year or three-year statute of limitations for each employee runs until the date that each employee files a written consent to opt into the action. 29 U.S.C. § 256; see Calloway v. AT&T Corp., 419 F.Supp.3d 1031, 1034-355 (N.D. Ill. 2019); see also Grayson v. K Mart Corp., 79 F.3d 1086, 1106 (11th Cir. 1996). Some members of the

Proposed Class may have some or all of their claims barred by the statute if they do not receive notice until after Defendants litigate the substance of Plaintiffs' claims.

The Defendants cite as support for their argument that the Court should consider substantive issues before conditional certification, the case of Hollins v. Regency Corp., 144 F.Supp.3d 990, 991 n.2 (N.D. Ill. 2015) affirmed, 867 F.3d 830, 832 (7th Cir. 2017). The parties in Hollins agreed to proceed with defendant's summary judgment motion before conditional class certification. See 867 F.3d at 832. The parties have made no such agreement here. Substantive issues should not be decided at step one of the collective class certification process. Smith, 2015 WL 13594414, at *4.

Defendants also argue that Reed and McLinden have failed to present a modest factual showing that Case Managers at all three Hospitals are similarly situated. The Court disagrees. Reed and McLinden stated in the declarations that they worked with Case Managers from the other two hospitals, talked to Case Managers from the other two hospitals, and observed Case Managers from the other two hospitals. Reed and McLinden's statements under penalty of perjury that the Case Managers at all three hospitals performed the similar functions, therefore, were based on personal knowledge.

In addition, the Defendants agreed that Case Managers at all three hospitals performed the functions of reviewing patient charts, interviewing patients, discharge planning, and setting up needed services. Defendants further produced in discovery a single job description for Case Managers at the Hospitals and admitted that they classified Case Managers at all three Hospitals as exempt positions. The declarations, combined with the Defendants' agreement regarding the duties of Case Managers at all the Hospitals, the single job description for Case Managers at all three Hospitals, and the fact that Defendants consistently classified Case Managers at all three Hospitals more than meets the low standard of making a modest factual showing necessary to conditionally certify the Proposed Class.

Defendants argue that the proposed class is too small. Defendants urge the Court to require Plaintiffs to meet the numerosity requirement of Rule 23. The Court again disagrees. Section 216(b) states that "one or more" employees who are similarly situated may bring a collective action. The statutory language shows that the numerosity requirement of Rule 23 does not apply because one or more employees can bring a collective action under FLSA § 216(b). The Seventh Circuit has also held that Rule

23 requirements do not apply to FLSA collective actions. King, 960 F.2d at 621.

The Defendants cite dicta in Espenscheid v. DirectSat USA, LLC, 705 F.3d 770, 772 (7th Cir. 2013), to support their argument that the Proposed Class must meet the Rule 23 numerosity requirement. The plaintiffs in Espenscheid brought both an FLSA § 216(b) collective action claim and class action claims governed by Rule 23. The District Court in Espenscheid applied Rule 23 considerations in addressing certification issues for all of the claims. The dicta in Espenscheid commented on the District Court's decision to use Rule 23 considerations for all the claims. The Espenscheid Court did not hold that Rule 23 considerations apply to § 216(b) collective actions. In addition, numerosity was not an issue in Espenscheid because the proposed class consisted of a large number of class members, 2,341 individuals. Id. The dicta in Espenscheid does not change the express language in § 216(b) that collective claims may be brought by one or more employees. The Espenscheid opinion also did not overrule the Seventh Circuit's decision in King that § 216(b) preempted Rule 23 for collective actions brought under that section. The Rule 23 numerosity requirement does not apply to FLSA collective actions.

This Court recommends that the Plaintiffs' Proposed Class should be conditionally certified, and a court-approved notice should be sent to the proposed class members. To facilitate sending the court-approved notice, the Court should direct Defendants to produce to Plaintiffs within seven days of approval of this Report and Recommendation:

> A list, in Excel format, of all persons employed by Health Services Corporation and/or Progressive Health Systems in Case Management, Utilization Review, and similar positions in Defendants' hospitals or other health care facilities in the State of Illinois from December 23, 2016 to the present, including their name, last known address, email address, telephone number, dates of employment, location of employment, last four digits of their social security number, and date of birth.

See Motion, at 14 (Excel Spreadsheet).

Finally, the parties disagree on some of the language in the Plaintiffs' proposed notice. It appears that the parties may be able to resolve at least some of their differences on the language of the notices. See Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Conditional Certification and for Court-Supervised Notice to Issue (d/e 29), at 11 (Plaintiffs "are willing to confer with defense counsel and attempt to present an agreed form of notice."). The Court should direct the parties to meet and confer and agree on the language for the notice within 14 days of approval of this Report and Recommendation. If the parties cannot agree, each should submit its proposed language within 14 days of approval of this

Report and Recommendation, and the Court should approve a final version of the notice. Upon approval of the notice, the Court should authorize Plaintiffs to send the notice to the Proposed Class identified on the Excel Sheet.

THEREFORE, this Court RECOMMENDS that Plaintiff's Motion for Conditional Certification and for Court-Supervised Notice to Issue (d/e 24) be ALLOWED in part. The Court should conditionally certify the Proposed Class and direct Defendants to provide the Plaintiffs with the Excel Spreadsheet within seven days of approval of the Report and Recommendation. The parties should be directed to confer and agree on the language for the notice to be sent to members of the Proposed Class and to submit the agreed notice to the Court within 14 days of approval of this Report and Recommendation. If the parties cannot agree, each should submit its proposed language within 14 days of approval of this Report and Recommendation. Upon the Court's approval of the notice, the Court should authorize Plaintiffs to send the notice to the members of the Proposed Class.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of a copy of this Report and Recommendation.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file a timely objection will constitute a waiver of objections on appeal. See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See Local Rule 72.2.

ENTER: March 1, 2021

s/ *Tom Schanzle-Haskins*
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE